UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ANALISSA JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:17-CV-925 JD |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Plaintiff Analissa Johnson appeals the denial of her claims for disability insurance benefits and supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

## **BACKGROUND**

Analissa Johnson, 45, suffers from bipolar disorder and PTSD. She has experienced very significant trauma in her life, as set forth at R. 46-48, 485, 516, 521, 526, and 730. On April 5, 2014, Ms. Johnson suffered a heart attack (R. 356), which appears to have intensified the symptoms associated with her psychiatric diagnoses.

Ms. Johnson filed applications for disability insurance benefits and supplemental security income on August 4, 2014, alleging disability beginning April 5 of that same year. Her date of last insured was March 31, 2015. Ms. Johnson's application was denied initially, on reconsideration, and following an administrative hearing in March 2017 at which she was represented by counsel. At that hearing, the ALJ heard testimony from Ms. Johnson and vocational expert ("VE") Sharon Ringenberg. The ALJ found that Ms. Johnson had some severe

1

impairments but that she has not been disabled since April 5, 2014. *See* 20 C.F.R. §§ 404.1520, 416.920. The Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of

evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of

proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Johnson now challenges the ALJ's decision on various grounds. The Court need not address all of them, however, because the ALJ failed to adequately consider (or at least explain) an entire line of evidence regarding Ms. Johnson's flashbacks and panic attacks. As discussed below, this shortcoming necessitates remand.

A.   **Ms. Johnson's Flashbacks and Panic Attacks**

Ms. Johnson argues that the ALJ omitted meaningful consideration of her recurring flashbacks, related panic attacks, and the impact of those episodes on her ability to function.[1] It is well-established that, while the ALJ need not address every piece of evidence in the record, he cannot ignore an entire line of evidence that contradicts his findings. *Zurawski*, 245 F.3d at 888. Ms. Johnson's debilitating flashbacks repeatedly came up in this case. At the hearing, Ms. Johnson testified that she experiences flashbacks of her past traumatic events two or three times per week, and that they are brought on by simple stimuli, such as a television show or video, something someone might say in passing, or even her own thoughts. (R. 57-58). Being near certain places that remind her of past trauma can also trigger these flashbacks. (R. 58). Ms. Johnson further testified that these flashbacks induce panic attacks resulting in her heart racing and her body shaking, and that they can occur either when she is alone or around other people. (R. 58-59). According to Ms. Johnson, it takes at least one hour for her to recover from these flashbacks, and they can also make her unable to focus for the rest of the day after they have

---

[1] Ms. Johnson's reported flashbacks differ from her night terrors and nightmares. Ms. Johnson maintains that the ALJ failed to consider those as well, but the ALJ made several explicit references to her nightmares, noted their impact on her sleep, and charted indications of improvement in the medical records. (R. 20-22).

passed. (R. 59). Both Ms. Johnson and her boyfriend noted in their functional reports that these panic attacks impact Ms. Johnson's ability to focus. (R. 264, 273, 290). In her own words, these flashbacks are "like having a film reel play in my own head" and they trigger her panic disorder. (R. 291).

Ms. Johnson's testimony also has support in the medical evidence. The record is replete with the observation that her "past trauma due to physical, emotional, sexual, and medical abuse … cause her to have frequent panic attacks in which she relives the experience." (R. 560, 603, 605, 619). These flashbacks appear in Ms. Johnson's treatment record as early as October 2014 and again one month later. (R. 526, 534). In January 2015, Ms. Johnson reported that journaling about her life triggers flashbacks of abuse. (R. 508). From then until April 2015, she reported having many flashbacks, some of them specifically about her dog attack, and that it took "awhile" for her to shake those thoughts. (R. 602, 893, 901). In early October 2016, she reported reliving a previous traumatic experience and that a song she heard triggered this flashback. (R. 645). Ms. Johnson's treating therapist noted that Ms. Johnson continued to struggle with these attacks as recently as February 2017—only one month before the hearing and two months before the ALJ reached his decision.

The ALJ did not discuss Ms. Johnson's frequent flashbacks in his opinion and only referenced her related panic attacks twice in passing. (R. 21, 23). And he completely ignored Ms. Johnson's hearing testimony regarding the limiting effects of those attacks: that they can render her unable to focus for anywhere from one hour to one day. This failure is inexplicable given that these issues were extensively explored at the hearing and supported in the medical records, and moreover contravenes Seventh Circuit precedent. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (remanding where ALJ ignored evidence of several of the claimant's

purported symptoms). Perhaps even more notable, the VE testified at the hearing that an individual subject to panic attacks that cause her to leave work one to two hours early, twice per week, would not be able to maintain competitive employment. (R. 78). The ALJ disregarded this testimony as well, which nullifies the social functioning accommodations he included in the RFC and exacerbates his failure to consider Ms. Johnson's flashbacks and panic attacks in light of her report that they occur two or three times per week. *See Winsted v. Berryhill*, --- F.3d ---, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019) (remanding where ALJ ignored VE testimony that a hypothetical individual with the same limitations in concentration, persistence, and pace as the claimant could not sustain employment).

Overall, the ALJ merely paid lip service to Ms. Johnson's flashbacks and panic attacks, thereby failing to adequately consider an entire line of evidence in the record. This requires remand. *Zurawski*, 245 F.3d at 889 (remanding where ALJ only discussed medical records favoring denial of benefits and omitted discussion of MRI results predating those records that supported disability). Again, the ALJ need not address every piece of evidence in the record, but here he has not even "provide[d] some glimpse into the reasoning behind [his] decision to deny benefits," as he does not explain how the extensive evidence of Ms. Johnson's flashbacks and panic attacks was overcome by the evidence on which he relied. *Id.*

### B.     Additional Considerations on Remand

On remand, the Court invites the ALJ to review whether his RFC is otherwise adequately supported by the record. For example, the ALJ repeatedly relies on the fact that Ms. Johnson drove her boyfriend to work up until 2016. (R. 18, 20, 22, 23, 24). However, the ALJ failed to consider evidence that this only required Ms. Johnson to drive one and a half miles, and that she never left her car—he simply overlooked that evidence. (R. 73-74). The ALJ further relies on the

fact that Ms. Johnson denied suicidal ideations in February and November 2016. (R. 22). He does not explain, however, why these observations should be given any more weight over Ms. Johnson's reports of suicidal thoughts in March and June of that same year. (R. 686, 714). Nor does he mention the fact that Ms. Johnson's treating therapist, Cathy Groves, indeed recorded Ms. Johnson as having thoughts of self-harm and suicidal ideations in November 2016, or that Ms. Groves discovered in October 2015 that Ms. Johnson had been keeping suicidal ideations from her therapist for the past three months. (R. 636, 770). And, while acknowledging that Ms. Johnson only goes to the store at night (R. 20), the ALJ fails to note that she only goes to the store very late at night *so as to avoid other people*. (R. 63). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ may consider whether he has met this obligation on remand. Moreover, given the reliance on these incomplete assessments, which served as a basis for giving Ms. Groves's opinions little weight, on remand the ALJ might also reconsider how much weight to give those opinions.

In addition, the ALJ assigned little weight to Ms. Groves's opinion that Ms. Johnson could not work due to her intense fear of going out in public places and associated anxiety (R. 542, 841), in part because Ms. Johnson "does not have a recurring diagnosis of agoraphobia." (R. 24). The ALJ's statement is correct: not a single treating source in this case—therapist or physician—diagnosed Ms. Johnson with (or even referenced) agoraphobia. But that creates a problem because the ALJ, in the absence of any such evidence, filled a perceived evidentiary void with his own non-professional opinion. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (The ALJ may not "play doctor" by using her own lay opinions to fill evidentiary gaps in

7

the record.); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence."). The ALJ played doctor here by concluding that the lack of an agoraphobia diagnosis is altogether inconsistent with Ms. Johnson's anxiety and acute fear of going out in public. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (remanding where ALJ concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation; no expert offered evidence to that effect); *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (An ALJ may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis.). Moreover, by drawing a conclusion from the absence of a specific agoraphobia diagnosis here, especially in the face of Ms. Groves's opinions and observations which are consistent with such a diagnosis, the ALJ discredited Ms. Johnson's symptomatic complaints based on his observation that no doctor or therapist specifically confirmed her claims with a medical opinion. He cannot do so. *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."); *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."). On remand, the ALJ may reassess the appropriateness of discounting Ms. Groves's opinion based on his own perceived lack of an agoraphobia diagnosis.

Lastly, while not raised by Ms. Johnson, the Court invites the ALJ to revisit his apparent decision to discredit her symptomatic complaints based on the fact that "she was never psychiatrically hospitalized." (R. 23). The ALJ tacked this to the end of his credibility determination without providing any further explanation or analysis. The ALJ should approach

the issue of treatment with caution when a claimant has a mental illness. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). The Seventh Circuit has recognized that mental illness "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). Moreover, "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Thus, a claimant is not required to be hospitalized in order to demonstrate a severe mental impairment. *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004). On remand, the ALJ should more carefully consider and explain whether the lack of emergency treatment or inpatient hospitalization impacts Ms. Johnson's credibility, especially given her other medical records which document her mental impairments and the ongoing limitations that they cause.

Some of Ms. Johnson's other arguments, however, do not persuade the Court. In particular, Ms. Johnson faults the ALJ for repeatedly relying on his observation that she "addressed all questions asked directly of her and there were no signs of anxiety or depression" at the hearing. (R. 20, 21, 23). Ms. Johnson argues this statement constitutes yet another instance of "playing doctor" whereby the ALJ used prohibited "sit and squirm" jurisprudence. But even in the primary case on which Ms. Johnson relies, *Powers v. Apfel*, 207 F.3d 432 (7th Cir. 2000), "the Seventh Circuit noted some misgivings about a 'sit and squirm' test for the assessment of pain but nonetheless continued to endorse 'the role of observation in determining credibility' on the issue." *Nester v. Astrue*, 2013 WL 4540673, at *5 (N.D. Ind. Aug. 27, 2013) (discussing and quoting *Powers*, 207 F.3d at 436). Furthermore, the "sit and squirm" test Ms. Johnson refers to applies more aptly to cases in which an ALJ discredits a claimant's reports of *physical pain* (as

opposed to symptoms of psychological diagnoses) based on the ALJ's perception that the claimant could sit still throughout the hearing without appearing to be in discomfort or distress. *See Powers*, 207 F.3d at 436 (discussing cases).

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 4, 2019

                                                  /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court